Tucker, P.
On the question of jurisdiction in this case, I have found no difficulty. Townes Sp Webb were the agents of Birchett, and in that character were peculiarly amesnable to equitable jurisdiction. Moreover, Birchett's claim being for the proceeds of sales of a parcel of goods, which were in the knowledge of the auctioneers exclusively, he had a right to call for an account of them, and he did call for an account accordingly. It is said, however, that the account had been already rendered. True : but there was no obligation on Birchett to sit down satisfied with that account not rendered on oath: he had a right to have it so verified by proceeding in equity. And though by retaining the account rendered he gave it the character of a stated account, it did not conclude him, for he still had a right to surcharge and falsify, and he had a right to a discovery from the defendants on oath to aid in sustaining his objections. It is said, indeed, that the bill does not surcharge or falsify. But that is a mistake. There are various items of both: the complaint of excessive charge for commissions, and of the payments made to Durkin, *191 Henderson Sr go. and others, are instances of surcharge ; ° and the charge of 1572 dollars to him for bad debts, is also objected to, and properly forms an item of falsification. Now, the rule is that if one item of objection is sustained, the whole account is opened before the commissioner for surcharge and falsification. The first item is clearly sustained, though it is one of small importance ; and whether the others can be, is a matter which ought to be the subject of further enquiry. But what is conclusive as to the jurisdiction, is, that Birchett could not have sued at law. By the arrangement between the parties, Townes Sp Webb were not to pay the proceeds of sales of the goods to Birchett, until be should give Thayer additional security. This, Townes alleges, he never did. He could not, then, have recovered at law. Equity was the proper forum, where the stakeholders and both claimants could be convented. Neither claimant could compel payment at law; at least, he could not without the assent of the other. This assent was never given by Thayer, as Townes himself alleges; it was never given until since this suit was brought. On various grounds, therefore, I think the jurisdiction is beyond reasonable question.
Seeing then no substantial objection to the jurisdiction, and not deeming it necessary to go more at large into that point, I proceed to the merits. And here the first question is as to the weight to be attributed to the evidence of the account rendered in October 1827. The transactions in question took place in the town of Peters-burg, where both the parties resided. They stood in the relation to each other, of a vendor of goods at auction, and the auctioneers. The goods were sold as early as the year 1821; and the appellee being in embarrassed circumstances, had every motive to demand an account of sales, and the payment of the proceeds. It is alleged, that the parties were on friendly terms, and that the accounts were at all times open to inspection, and were in *192 fact examined by the appellee: and though there is no direct evidence of this fact, the circumstantial evidence is irresistible. It is inconceivable, that Birchett, after selling a bond for goods, that he might raise money by the sale of them, should have remained inert from 1821 to 1827, without critical scrutiny into the account of sales and disbursements, when the amount which had been made available to him had fallen short more than one third of the estimated probable proceeds of sales. My own mind is, therefore, satisfied that Birchett knew all about the matter before he received the account in October 1827. Then, at least, he was fully informed; and it is observable, that except the claims for commissions and interest, there is only a single item excepted to on the debit side of the account. On the other side a short credit of 1572 dollars for the lost debts is complained of. This account was retained by Birchett from October 1827 till the year 1831, without objection or complaint. , Can it be believed, that it never was examined by him, or that being examined he never would have pointed out the objectionable items, and insisted on their expunction ? He is charged, for instance, with Foster’s draft: if improperly so charged, would he have acquiesced for four years ? I think not; and if there were no rule upon the subject, I should take that acquiescence as sufficient evidence that Townes, the agent of Birchett, who was collecting his funds and applying them, obviously with his assent and by his direction, to the discharge of his responsibilities, had justly charged him with Foster’s draft. But there is a rule upon the subject, and particularly applicable to merchants. “ Where one merchant sends his account current to another, though residing in a different country, and he keeps it two years without making any objections, it shall be deemed a stated account, and his silence and acquiescence shall bind him at least so far as to cast the onus probandi on him.” Such are the terms in which the rule is laid *193 down in Freeland v. Heron, Lenox & co. and Willis v. Jernecan, cited at the bar. Doubtless, it applies with more force between merchants in the same country, and yet more between merchants residing in the same town, and in the daily habit of intercommunication. Between such, a shorter period would give rise to the presumption. For the principle of the rule is that the retention of the account for an unreasonable time without objection, is evidence of acquiescence in its justice, and throws the burden of proof upon the party so acquiescing : and so it is laid down by judge Story, in his treatise on Equity, vol. 1. ch. 8. § 526-9, The rule is founded in good sense and justice. If a party does not deny what his adversary states in his presence and hearing, we infer the truth of the statement from his silence and apparent acquiescence. How much stronger is the case of the silence of a regular merchant for two years after he has received the account of his correspondent, which can be looked upon in no other light than as an assertion of a claim, which, if not admitted, should, in good faith as well as in prudence, be promptly repelled. I say in good faith, because its requisitions demand, that the earliest information shall be given to the claimant to enable him to assert his claim and preserve his evidence. If I do not intend to allow a demand, it is not fair dealing in me to delay payment, and by my conduct put off the commencement of a suit for years, and then take the chances of success from the loss of my adversary’s testimony.
The present is a strong case for the application of the rule. There is every reason to presume an early acquaintance with the accounts, and the account rendered was moreover above two years in Birchetts hands without objection. It must then be taken as true unless disproved.
Now as to Foster’s draft there is no evidence, so that that item ought to have been allowed. Next, as to the *194 lost debts. These are distinctly set forth in the account, and the principle just adverted to, applies to them. They should not be charged to Townes, unless there is proof either of culpable negligence or misappropriation. The latter ground has been most earnestly urged, and the cases of Johnson & Duggers v. O’Hara and Wren v. Kirton, are relied on to sustain it. I willingly defer to the principle of those cases; but I do not think they have any application to this peculiar case. To bring them to bear upon it, it must be shewn, that the notes in question have been diverted from then legitimate objects, and applied to the purposes and accommodation of the defendants. To establish this, it has been said, that the auctioneers took the notes in their own names, and discounted them for their own purposes. As to the notes being taken to themselves, it is, I think, the common course of business with auctioneers. As bailees to sell, they are bailees to receive payment ■ and hence they confessedly have a right of action in their own names against the purchasers. If so, it is not perceived that there is any thing improper in the ordinary custom of taking notes to themselves for the proceeds of sale. But if this be true, in any case, it was particularly true in this, where the auctioneers were stakeholders; where they were required to sell, but until the expiration of twelve months, it could not be determined whether the proceeds of sale were to go to Birchett or to Thayer. The notes then were properly taken in their own names. Have they been properly dealt with ? It is said, they were improperly discounted before maturity for the defendants’ use. That one was discounted seems probable : there is no such probability as to the others. Then, as to that one: was it discounted for the defendants’ use, or for the legitimate purpose of discharging Birchett’s responsibilities, or reimbursing their advances for him ? The facts, I think, prove the latter. As early as Becember 1821, their just debits against him, including *195 their commissions and interest, to which no objection had ever been made, were more than 5000 dollars, The proceeds of sales for money were only 3400 dollars, and there is no evidence that any other of the vario us notes, all of which were due at distant days, were discounted before maturity. The defendants had a right to discount some of them to reimburse themselves. They exercised this right by discounting one note of Morton co. and in doing so, are liable to no imputation of unfairness. I am, therefore, of opinion that there is nothing in the record which can justify throwing the loss of these notes upon the defendants. Yet, in reversing the decree, and sending the cause back for further proceedings, I think the questions as to Foster’s draft and the bad debts should be considered open before the commissioner to any further evidence of either party.
I see no just objection to the decree for being in favour of Robert Birchett the younger, or for the omission to revive the suit against the representative of Webb.
Cabell, J. concurred.